IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Cheriese D. Johnson | ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Carter's Retail, Inc. and | ) | JURY TRIAL DEMANDED |
| Carter's, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

NOW INTO COURT, through undersigned counsel, comes Plaintiff,
Cheriese D. Johnson, who files this Complaint for Injunctive Relief and
Damages against Defendant, Carter's Retail Inc. and Carter's, Inc., alleging as
follows:

## JURISDICTION AND VENUE

1.

Plaintiff asserts claims under The Americans With Disabilities Act
Amendments Act of 2008, 42 U.S.C. §§ 12101, *et seq.*, Pub. L. No. 110-325, 122
Stat. 3553 ("ADAAA"), The Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et.*
*seq.* ("FMLA"), and other applicable federal statutes, regulations, and rules. This
Court has subject matter jurisdiction under 28 U.S.C. § 1331 and §1337.

2.

Venue is appropriate in this judicial district under 28 U.S.C. § 1391.

3.

Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on May 29, 2019, a true and accurate copy of which is attached as <u>Exhibit A</u> and incorporated by reference.

4.

The EEOC issued a Notice of Right to Sue dated May 25, 2021, a true and accurate copy of which is attached as <u>Exhibit B</u>. This lawsuit was filed within ninety days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

5.

Plaintiff has properly and timely exhausted all applicable administrative remedies and conditions precedent for seeking judicial relief.

## **PARTIES**

6.

Plaintiff is an individual who resides in Georgia.

7.

Plaintiff was formerly employed by Defendants at Defendants' offices

located in Atlanta, Georgia. The causes of action pled herein arise in connection with Defendants' former employment of Plaintiff and its alleged employment practices occurred within this judicial district.

8.

Upon information and belief, Defendants Carter's Retail, Inc. and Carter's, Inc. (collectively "Defendants" herein) are foreign for profit corporations that maintain a shared principal office at 3438 Peachtree Road NE, Atlanta, Georgia 30326 and each is authorized to conduct and does conduct business within the State of Georgia and each is subject to the jurisdiction of this Court.

9.

All of the acts and omissions complained of herein occurred within the Northern District of Georgia.

10.

Each of the Defendants constitutes a person engaged in commerce or in an industry or activity affecting commerce who, at all relevant times, employed 50 or more employees within 75 miles. Defendants are covered by the FMLA. At all times relevant, Plaintiff was an eligible employee under the FMLA.

11.

At all relevant times, Defendants have continuously been an employer

engaged in an industry affecting commerce. Defendants are covered by the ADAAA.

## FACTUAL BACKGROUND

### 12.

Plaintiff's full-time employment with one or both of the Defendants began on or about June of 2016, although Plaintiff began working for Defendants as an independent contractor in December of 2015.

### 13.

Beginning in June of 2016 Defendants employed Plaintiff with the job title of Senior Human Resources Business Solutions Analyst.

### 14.

Defendants paid Plaintiff a salary of approximately $120,00 annually together with certain fringe benefits, including health care.

### 15.

Defendants determined before hiring Plaintiff that he was fully qualified for the position of Senior Human Resources Business Solutions Analyst.

16.

At all times relevant, Plaintiff was fully qualified for her job with Defendants.

17.

During the time Plaintiff worked for Defendants, Defendants made use of an employee handbook that applied to Plaintiff (the "Handbook").

18.

As a Senior Human Resources Business Solutions Analyst, Plaintiff performed her essential job functions well and in a satisfactory manner, without any complaint from her superiors.

19.

In or about September of 2016, Plaintiff met with representatives of Defendants and notified Defendants of her medical condition, ongoing treatment and to discuss reasonable accommodations, consistent with correspondence from her treating physician suggesting work limitations.

20.

As a result of her condition of health, Plaintiff had begun suffering impairments for which he requested and needed reasonable accommodations.

21.

Plaintiff received treatment from health care providers related to her symptoms and impairments.

22.

Defendants agreed to comply with the accommodations initially suggested by Plaintiff's treating physician in September of 2016, and she was correspondingly permitted to work from home on occasion, record in-person meetings or take written notes in meetings.

23.

While the accommodations worked for some time, Plaintiff's supervisors began to complain to Plaintiff that her illness was affecting her job performance.

24.

In response, Plaintiff contacted Defendant's Human Resources personnel and informed them that she was preparing to undergo significant diagnostic surgery in attempt to confirm her diagnosis.

25.

Plaintiff did indeed undergo two invasive procedures in or about January or February of 2017.

26.

Because Plaintiff had not yet become eligible for FMLA benefits, her time away from work was considered a medical leave of absence.

27.

After being on medical leave of absence, Plaintiff attempted to return to work in or about April of 2017 but found that she was not yet prepared medically to return, experiencing cognitive deficits, causing her to go back on leave.

28.

In June of 2017, Plaintiff underwent a major surgery as necessary to advance her treatment for what by then had been diagnosed as a rare auto-immune disease.

29.

Plaintiff suffered complications from the June 2017 surgical procedure and was re-admitted to the hospital for a week.

30.

Thereafter, Plaintiff attempted to discuss accommodations with Defendants' agents in her attempt to return to work full time but Defendants continued to deny her requests to return to work and refused to engage in any further discussions regarding options for reasonable accommodations.

31.

In or about November of 2017, Plaintiff had an additional surgical procedure that rendered her incapable of working for several weeks while Plaintiff regained the ability to speak.

32.

In or about December of 2017, Plaintiff was desperate to return to work and contacted Defendants' agent, Kyndal Burton in the Human Resources Department, who assured Plaintiff that her position was still available to her upon her return.

33.

In December of 2017, in effort to make her return to full-time employment, Plaintiff's treating physician authored several recommendations in attempt to meet Carter's demands while not overtaxing Plaintiff and upsetting the progress she was making medically.

34.

Defendants rejected each of Plaintiff's treating physicians' reasonable accommodations requests issued in December of 2017 and Plaintiff's request to return to work was, thus, denied.

35.

Frustrated with Defendants' refusals of her treating physician's proposed accommodations, in January of 2018 Plaintiff once again contacted Kyndal Burton in Defendants' Human Resources Department, where upon she was told that she would not be permitted to return to work unless she was 100% healthy without any restrictions.

36.

In the same exchange, Defendants' agent Kyndal Burton informed Plaintiff that her disability "did not fit with the culture of the company," overtly indicating that Defendants would be making no further attempts to accommodate Plaintiff.

37.

Plaintiff immediately complained that she was being discriminated against because of her disability, but her complaints yielded no constructive response or assistance from Defendant's agents.

38.

In December of 2018, Plaintiff received correspondence from Defendants terminating her employment, but the termination was revoked when Plaintiff complained that the termination was, in her estimation, unlawful as based on her disability.

39.

Thereafter, Plaintiff was still not permitted to return to work with reasonable accommodation; rather, she was left on medical leave for a prolonged period, in a form of employment "limbo".

40.

On or about February 25, 2019, Plaintiff discovered that her

employment with Defendants had been terminated when she was informed by one of her care providers while attempting to process a payment that her medical insurance and benefits had been cut off.

41.

While Defendants claim that multiple attempts were made to contact her to discuss her employment status in 2018, in reality Plaintiff heard nothing from her former employer for nearly the entire year of 2018, contact only being re-established when she contacted Defendants to inquire about 2019 healthcare enrollment.

42.

Without the ongoing healthcare benefits that Plaintiff so desperately needed in her attempt to stave off the life-threatening and debilitating effects of her auto-immune disease, Plaintiff's health has declined precipitously since her termination and the cessation of her health benefits, as she cannot afford to pay for the extensive treatments needed out-ot-pocket.

43.

When communicating with Defendants concerning her conditions and impairments, Plaintiff believed in good faith that she was entitled to reasonable accommodation and that Defendants' refusal to accommodate her was an improper employment practice in violation of her rights.

44.

At all relevant times, Defendants knew that Plaintiff had a "disability" as that term is defined under the ADAAA and applicable federal regulations.

45.

Defendants could have accommodated Plaintiff's and her physicians' requests for reasonable accommodation without undue hardship to its business.

46.

Defendants undertook no significant steps to evaluate and explore with Plaintiff whether it could grant her and her physicians' requests for accommodation without undue hardship to its business.

47.

Thereafter, Defendants unilaterally terminated Plaintiff's employment relationship with Defendants.

48.

Plaintiff's conditions and impairments alleged above were not both transitory and minor.

49.

Prior to terminating Plaintiff's employment, Defendants did not afford

Plaintiff an opportunity to correct any deficiency in her job performance upon which it purportedly based its decision to terminate her employment and otherwise failed to follow its own Handbook, policy and procedure.

50.

Prior to terminating Plaintiff's employment, Defendants did not follow, and by terminating Plaintiff precluded her from following, the grievance procedure in its Handbook.

51.

Under the Handbook, Defendants could have imposed a less severe form of discipline than termination of Plaintiff's employment.

52.

Upon information and belief, Defendants historically have imposed less severe form of discipline than termination for employees who did not possess a disability under the ADAAA.

53.

Pursuant to the Handbook and/or Defendants' policy and customary employment practice, Defendants have used less severe forms of discipline than job termination (such as suspension, probationary action, and demotion) to discipline employees who did not possess a disability under the ADAAA.

54.

By not giving Plaintiff some form of discipline less severe than job termination (such as suspension, probationary action or demotion), Defendants treated Plaintiff differently and less favorably than it has treated employees who did not possess a disability under the ADAAA.

55.

Defendant's actual motivation in terminating Plaintiff's employment was not Plaintiff's job performance.

56.

Defendant's actual motivation in terminating Plaintiff's employment was not a legitimate, non-discriminatory, and non-retaliatory motivation.

57.

Upon information and belief, after Defendants terminated Plaintiff's employment, Defendants employed one or more individuals to perform Plaintiff's former job duties who did not have a disability.

58.

At the time of the adverse employment actions taken by Defendants against Plaintiff, Defendants knew that Plaintiff suffered from the impairments and conditions described above. At all relevant times, Defendants' supervisors identified above acted within the scope of their

employment and on behalf of Defendants.

## COUNT I: ADAAA
## (Disability Discrimination)

59.

Plaintiff incorporates herein by reference as if restated verbatim each paragraph of her Complaint.

60.

At all relevant times, Plaintiff was qualified for her job.

61.

At all times relevant, Plaintiff was a qualified individual with a disability, or a record of a disability, within the meaning of the ADAAA and applicable regulations.

62.

At all times relevant, Defendants had notice and knew of Plaintiff's disability.

63.

At all times relevant, Plaintiff was capable of performing the essential functions of her job either with or without reasonable accommodation.

64.

Defendants failed to satisfy their duty under the ADAAA to engage in an

interactive process to determine whether and how they might reasonably accommodate Plaintiff's disability.

65.

Defendants could have reasonably accommodated Plaintiff's disability without undue hardship.

66.

Plaintiff was unlawfully subjected to discrimination because of an actual disability or a record of a disability.

67.

At all relevant times, Defendants regarded Plaintiff as having an impairment that was not transitory and minor and took action prohibited under the ADAAA by terminating Plaintiff's employment on that basis.

68.

Plaintiff was replaced or treated less favorably than other employees of Defendant who were not disabled or impaired.

69.

Plaintiff was subjected to adverse employment actions up to and including termination of employment, on account of her disability or Defendant's perceptions of impairments, or both.

70.

Defendants intentionally engaged in said discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights.

71.

As a direct result of Defendants' discrimination in violation of the ADAAA retaliation, Plaintiff suffered and continues to suffer harm, including but not limited to a loss of income, benefits, prestige and promotional opportunities, as well as mental and emotional distress and other actual and compensatory damages, for which he is entitled to recover from Defendants in an amount to be determined by the enlightened conscience of a jury.

72.

Defendants' actions were willful, intentional, malicious, and conducted in bad faith with callous and/or reckless indifference to Plaintiff's federally-protected rights, thereby entitling Plaintiff to an award of punitive damages.

73.

Plaintiff is entitled to an award of costs, including reasonable attorneys' fees, as a result of Defendants' discrimination in violation of the ADAAA.

74.

Plaintiff is entitled, in the Court's discretion, to injunctive and other

equitable relief to remedy and enjoin Defendants' violations of the ADAAA.

## COUNT II: ADAAA
## (Retaliation)

### 75.

Plaintiff incorporates herein by reference as if restated verbatim each paragraph of her Complaint.

### 76.

By reporting, complaining of and opposing the discriminatory practices and treatment described above to Defendants, Plaintiff engaged in statutorily protected activity under the ADAAA.

### 77.

Defendants retaliated against Plaintiff by taking adverse employment actions, including a disciplinary write up and termination of employment, against her in reprisal for statutorily protected activity.

### 78.

Defendants' adverse employment action and Plaintiff's statutorily protected activity were in close temporal proximity, were not wholly unrelated, and were causally linked.

### 79.

As a direct result of Defendants' retaliation in violation of the ADAAA,

Plaintiff suffered and continues to suffer harm, including but not limited to a loss of income, benefits, prestige and promotional opportunities, as well as mental and emotional distress and other actual and compensatory damages, for which he is entitled to recover from Defendants in an amount to be determined by the enlightened conscience of the jury.

80.

Defendants' actions were willful, intentional, malicious, and conducted in bad faith with callous and/or reckless indifference to Plaintiff's federally-protected rights, thereby entitling Plaintiff to an award of punitive damages.

81.

Plaintiff is entitled to an award of costs, including reasonable attorneys' fees, as a result of Defendants' retaliation in violation of the ADAAA.

82.

Plaintiff is entitled, in the Court's discretion, to injunctive and other equitable relief to remedy and enjoin Defendant 's violations of the ADAAA.

### <u>COUNT III: FMLA</u>
### <u>(Violation of the FMLA/Interference</u>
### <u>with FMLA rights)</u>

83.

Plaintiff incorporates herein all of the above paragraphs of her

Complaint.

84.

In or about June of 2017, Plaintiff became an eligible employee under the FMLA.

85.

At all relevant times, Plaintiff's above described conditions and impairments involved a period of incapacity combined with continuing treatment by a health care provider, were chronic, and/or required multiple treatments by a health care provider. Plaintiff had a "serious health condition" within the meaning of the FMLA and applicable federal regulations.

86.

Plaintiff gave appropriate notice of her need to be absent from work in that, because he could not foresee the need for leave, he notified Defendants as soon as practicable after she learned of the need for leave.

87.

Plaintiff was entitled to take leave under the FMLA after her one year anniversary of employment with Defendants.

88.

Plaintiff gave notice to Defendants of her need and intention to take leave.

89.

Defendants failed to provide Plaintiff with written notice detailing the specific expectations and obligations of Plaintiff and explaining consequences of a failure to meet those obligations.

90.

Plaintiff was terminated not long after returning from leave.

91.

Plaintiff's taking leave played at least a motivating part in Defendants' decision to take adverse employment actions against Plaintiff.

92.

Defendants interfered with, restrained and/or denied the exercise or attempt to exercise by Plaintiff of rights under the FMLA, in violation of the FMLA.

93.

As a result of Defendants' violation of the FMLA, Plaintiff is entitled to recover, actual damages as allowed by the FMLA, liquidated damages, and her costs in prosecuting this action, including reasonable attorneys' fees.

94.

Plaintiff is entitled in the Court's discretion to injunctive and other

equitable relief available under the FMLA, or other applicable law, to remedy and enjoin Defendant's violations of the FMLA.

**COUNT IV: FMLA**
**(Discrimination/Retaliation for**
**The Exercise of FMLA Rights)**

95.

Plaintiff incorporates herein all of the above paragraphs of her Complaint.

96.

Plaintiff engaged in statutorily protected activity under the FMLA.

97.

Plaintiff suffered adverse employment actions.

98.

Plaintiff's taking leave played at least a motivating part in Defendants' decision to take adverse employment actions against Plaintiff, including a disciplinary write up and termination of employment.

99.

Plaintiff was treated less favorably than an at least one employee who had not requested leave.

100.

A causal connection exists between the adverse employment actions above and Plaintiff's exercise of her FMLA rights

101.

Defendants retaliated against Plaintiff as a result of Plaintiff's exercise or attempted exercise of rights under the FMLA and violated the FMLA.

102.

As a result of Defendant's violation of the FMLA, Plaintiff is entitled to recover actual damages as allowed by the FMLA, liquidated damages, and her costs in prosecuting this action, including reasonable attorneys' fees.

103.

Plaintiff is entitled in the Court's discretion to injunctive and other equitable relief available under the FMLA, or other applicable law, to remedy and enjoin Defendant's violations of the FMLA.

## **COUNT V: Discriminatory Discharge**

104.

Plaintiff incorporates herein all of the above paragraphs of her Complaint.

105.

Defendants' conduct alleged herein renders Defendants liable unto

Plaintiff for discriminatory discharge, as Plaintiff was terminated because of her chronic disability.

106.

As alleged above, Plaintiff suffered from a well-established and fully diagnosed medical disability.

107.

Plaintiff was fully qualified for her job as a Senior Human Resources Business Solutions Analyst.

108.

Plaintiff suffered an adverse employment action because of her disability, as Defendants would not have terminated her employment but for the existence of her disability, which Defendants refused to accommodate with reasonable measures.

109.

As a direct and proximate result of Defendants' discriminatory termination of Plaintiff's employment, she has suffered significant damages, including but not limited to the loss of vital medical benefits necessary to stave off the progression of her chronic and potentially terminal illness, such amount of damages to be decided by a jury at trial.

## Jury Demand

110.

Plaintiff demands trial by jury on all issues so triable herein.

WHEREFORE, Plaintiff prays:

(a) That the Court declare the Defendants' actions, policies, and practices alleged herein violated Plaintiff's federally-protected rights;

(b) That Defendants be ordered to reinstate Plaintiff to her former position of employment or an equivalent position, with restoration of her seniority and benefits as if Defendant had never discriminated or retaliated against her;

(c) for an award of all actual, compensatory, and special damages against Defendant, with prejudgment interest thereon, based on the evidence adduced at trial and as allowed by law for each of the causes of action set forth herein, including:

(1) special damages for economic injuries as a consequence of Defendant's violations of Plaintiff=s federally-protected rights;

(2) compensatory damages for Plaintiff's pain and suffering, mental and emotional distress, anxiety, humiliation, outrage, loss

of professional and personal reputation, as a consequence of Defendants' violations of her federally-protected rights;

(3)  all employee benefits of any type, or the equivalent value thereof, which the Plaintiff should have already received and is presently entitled to receive and/or would receive in the future, but for Defendants' wrongful conduct as alleged herein;

(4)  back pay and retroactive increases in compensation, plus pre- and post-judgment interest thereon; and

(5)  front pay until Plaintiff is reinstated to her position or assigned to an equivalent or other appropriate position; and

(6)  liquidated damages under the FMLA.

(d)  punitive damages as determined by the enlightened conscious of the jury;

(e)  an assessment of costs of this action, including reasonable attorneys' fees;

(f)  a trial by jury of all issues so triable; and

(g)  all such other and further monetary and/or injunctive relief as allowed by law and/or deemed just and proper by the Court and/or the jury in this case based upon the causes of action set forth above and/or proven at trial.

DATED:    August 23, 2021

Respectfully submitted,

/s/ Eric L. Register

_____

Eric L. Register
Georgia Bar No. 599199
eregister@registerlett.com

Register | Lett LLP
1800 Peachtree Street, NW
Suite 809
Atlanta, Georgia 30309
Phone:  404-352-9019
Facsimile:  404-352-9018

Attorneys for Plaintiff,
Cheriese D. Johnson

26